IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION

| | |
|---|---|
| ONSCREEN DYNAMICS, LLC,<br><br>   Plaintiff,<br><br> v.<br><br>PENSKE AUTOMOTIVE GROUP, INC.,<br><br>   Defendant. | CASE NO. 7:25-cv-230<br><br>Jury Trial Demanded |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Onscreen Dynamics, LLC ("Plaintiff") files this Complaint for Patent Infringement and states as follows:

## **THE PARTIES**

1. Plaintiff is a limited liability company organized under the laws of the State of Delaware with a place of business at 6000 Shepherd Mountain Cove, Suite 1604, Austin, TX 78730.

2. Upon information and belief, Penske Automotive Group, Inc. is a corporation organized and existing under the laws of Delaware. Upon information and belief, Defendant does business in Texas and in the Western District of Texas, directly or through intermediaries. Upon information and belief, Defendant has a regular and established place of business in this Judicial District at least at the following: 7011 McNeil Drive, Austin, TX 78729; 2201 North Mays Street, Building #1, Round Rock, TX 78664; 9550 US 183A Toll Road, Leander, TX 78641; 9550 US 183A Toll Road, Building #2, Leander, TX 78641; 9910 Stonelake Boulevard, Austin, TX 78759; 108 Ranch Road 620 South, Lakeway, TX 78734; 7113 McNeil Drive, Austin, TX 78729; 29 E Industrial Loop 820, Midland, TX 79701; 1100 South Grandview, TX 79760; 2450

North Mays Street, Round Rock, TX 78665; 2301 North Interstate 35, Round Rock, Texas 78664; 2405 North Interstate 35, Round Rock, Texas 78664; and 2307 North Interstate 35, Round Rock, Texas 78664. Defendant describes these locations on its website as "Penske Automotive Group dealership[s]."

3. Defendant also advertises vehicles for sale at these locations on its website and allows visitors to submit a form to confirm availability of vehicles advertised on its website. By submitting the form, a user agrees that "PenskeAutomotive.com may contact me with offers or information about their products and services." Visitors to Defendant's website can specifically filter a search for pre-owned vehicles to vehicles available at particular dealerships, including dealerships located in this Judicial District. Defendant also maintains a website advertising job openings in this Judicial District.

## JURISDICTION AND VENUE

4. This Court has exclusive subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1338(a) on the grounds that this action arises under the Patent Laws of the United States, 35 U.S.C. § 1 et seq., including, without limitation, 35 U.S.C. §§ 271, 281, 284, and 285.

5. This Court has personal jurisdiction over Defendant, consistent with due process. On information and belief, Defendant has minimum contacts with the State of Texas, and Defendant has purposefully availed itself of the privileges of conducting business in the State of Texas. On information and belief, Defendant has engaged in systematic and continuous business activities in this District, directly or through intermediaries. On information and belief, Defendant has committed acts of patent infringement in this Judicial District, the State of Texas, as well as elsewhere in the United States. For example, on information and belief, Defendant has

committed acts of infringement in this Judicial District at least by inducing others, for example, to sell infringing vehicles as described herein. The exercise of jurisdiction over Defendant will not offend the traditional notions of fair play and substantial justice.

6. Venue is proper in this District under 28 U.S.C. § 1400(b) at least because, on information and belief, Defendant has a regular and established place of business in this Judicial District and has committed acts of infringement in this Judicial District.

## FACTUAL BACKGROUND

**U.S. Patent No. 9,395,917**

7. On July 19, 2016, U.S. Patent No. 9,395,917 ("the '917 patent"), entitled "Electronic Display with a Virtual Bezel," was duly and legally issued by the United States Patent and Trademark Office. A true and correct copy of the '917 patent is attached as Exhibit A.

8. Plaintiff is the assignee and owner of the right, title and interest in and to the '917 patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement.

9. The '917 patent is valid and enforceable.

10. The '917 patent includes 17 claims ('917 patent, Ex. A at 9:43-12:21.)

11. The '917 patent describes methods and devices that incorporate a virtual bezel as part of the touchscreen display on an electronic device. ('917 patent, Ex. A at 1:53-55.) As the '917 patent describes, "an electronic device is provided comprising a touchscreen display with at least two components, a primary touchscreen display area capable of processing a first set of touch-based inputs from a user of the electric device, and a secondary touchscreen display area which can be called a 'virtual bezel,' since it may be used to prevent any unintended touch of a user's hand with the touchscreen display, avoiding an unexpected interaction." ('917 patent, Ex.

A at 2:6-15.)

12.     The claimed inventions of the '917 patent are directed to technical problems related to how to prevent unintended registering of touching of a touchscreen electronic display, and thereby avoid unintended actions. Those technical problems also included placing components and controls, for example a camera, a speaker, or sensors, to avoid obstruction of the content on the touchscreen display. Those technical problems further included increasing display area while providing functionality of a physical bezel. *See, e.g.*, '917 patent at 1:21–59; *see also* Fig. 10.

13.     In order to improve the possible touchscreen display area that could be available to the user for viewing display content and for interaction with the electronic device, the '917 describes devices and methods that use or provide a virtual bezel. For example, the '917 patent describes an electronic device with a touchscreen display comprising an active touchscreen region and a virtual bezel area. The active touchscreen region functions to process a first set of touch-based inputs from a user of the electronic device according to a first mode of operation, and the virtual bezel area functions to process a second set of touch-based inputs from a user of the electronic device according to a second mode of operation. ('917 patent, Ex. A at Abstract.)

14.     The technological improvements described and claimed in the '917 patent were not conventional or generic at the time of their invention, but rather required novel and non-obvious solutions to problems and shortcomings in the art at the time. *See, e.g.,* '917 patent at 1:21-9:41. For example, claim 1 of the '917 patent is directed to a display screen having a virtual bezel area and an active touchscreen region, both of which display portions of content but have different modes of response to certain touch-based inputs.

15.     The inventions claimed in the '917 patent cover more than just the performance of

well-understood, routine or conventional activities known in the art. *See, e.g.,* '917 patent at 1:21-9:41.  For example, claim 1 of the '917 patent is directed to a display screen having a virtual bezel area and an active touchscreen region, both of which display portions of content but have different modes of response to certain touch-based inputs.

16. The '917 patent describes technological solutions to technological problems. The written description of the '917 patent describes in technical detail subject matter in support of each of the elements of the claims, including a display screen having a virtual bezel area and an active touchscreen region, both of which display portions of content but have different modes of response to certain touch-based inputs.

17. Each of the claims of the '917 patent is directed to improvements described and illustrated in the specification. For example, claim 1 of the '917 patent is directed to a display screen having a virtual bezel area and an active touchscreen region, both of which display portions of content but have different modes of response to certain touch-based inputs.

18. The written description describes each of the elements such that persons of ordinary skill in the art would understand what the claims and their elements cover and how the non-conventional and non-generic combination of claim elements differ markedly from, and improved upon, the art. *See, e.g.*, '917 patent at 1:21-9:41. For example, claim 1 of the '917 patent is directed to a display screen having a virtual bezel area and an active touchscreen region, both of which display portions of content but have different modes of response to certain touch-based inputs.

19. Technology leaders including Microsoft Technology Licensing LLC, Amazon Technologies, Inc., Samsung Electronics Co., Ltd., and the USPTO have cited the '917 patent as a reference over 20 times. *See* https://patents.google.com/patent/US9395917B2/en; 37 CFR

1.104, Nature of Examination ("the examiner must cite the best references at his or her command.").

20. Viewed in light of the specification of the '917 patent, the claims are not directed to basic tools of scientific and technological work, nor are they directed to a fundamental economic practice. *See, e.g.,* '917 patent at 1:21-12:21. For example, claim 1 of the '917 patent is directed to a display screen having a virtual bezel area and an active touchscreen region, both of which display portions of content but have different modes of response to certain touch-based inputs.

21. The claims of the '917 patent are not directed to the use of an abstract mathematical formula. *See, e.g.,* '917 patent at 1:21-12:21. For example, claim 1 of the '917 patent is directed to a display screen having a virtual bezel area and an active touchscreen region, both of which display portions of content but have different modes of response to certain touch-based inputs.

22. The claims of the '917 patent are not directed to the use of a general-purpose computer. *See, e.g.,* '917 patent at 1:21-12:21. For example, claim 1 of the '917 patent is directed to a display screen having a virtual bezel area and an active touchscreen region, both of which display portions of content but have different modes of response to certain touch-based inputs.

23. The claims of the '917 patent are not directed to implementation of a mathematical formula. *See, e.g.,* '917 patent at col. 1:21-12:21. For example, claim 1 of the '917 patent is directed to a display screen having a virtual bezel area and an active touchscreen region, both of which display portions of content but have different modes of response to certain touch-based inputs. Moreover, the cited prior art includes touch screen displays, yet the claims of the '917 patent were deemed novel and non-obvious, demonstrating (among other reasons) the non-conventionality of the technology described and claimed in the '917 patent.

24. The claims of the '917 patent are not directed to generalized steps to be performed on a computer using conventional activity. *See, e.g.,* '917 patent at 1:21-12:21. For example, claim 1 of the '917 patent is directed to a display screen having a virtual bezel area and an active touchscreen region, both of which display portions of content but have different modes of response to certain touch-based inputs.

25. The claims of the '917 patent are not directed to a method of organizing human activity or to a fundamental economic practice long prevalent in our system of commerce. *See, e.g.,* '917 patent at 1:21-12:21. For example, claim 1 of the '917 patent is directed to a display screen having a virtual bezel area and an active touchscreen region, both of which display portions of content but have different modes of response to certain touch-based inputs.

26. The claims of the '917 patent do not take a well-known or established business method or process and apply it to, or using, a general-purpose computer. *See, e.g.,* '917 patent at 1:21-12:21. For example, claim 1 of the '917 patent is directed to a display screen having a virtual bezel area and an active touchscreen region, both of which display portions of content but have different modes of response to certain touch-based inputs.

27. The claims of the '917 patent do not preempt the field of their claimed inventions or preclude the use of other methods and systems because the claims recite specific elements that include more than the performance of well-understood, routine, and conventional activities previously known to the art. *See, e.g.,* '917 patent at 1:21-12:21. For example, claim 1 of the '917 patent is directed to a display screen having a virtual bezel area and an active touchscreen region, both of which display portions of content but have different modes of response to certain touch-based inputs.

**U.S. Patent No. 9,645,663**

28. On May 9, 2017, U.S. Patent No. 9,645,663 ("the '663 patent"), entitled "Electronic Display with a Virtual Bezel," was duly and legally issued by the United States Patent and Trademark Office. A true and correct copy of the '663 patent is attached as Exhibit B.

29. Plaintiff is the assignee and owner of the right, title and interest in and to the '663 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement.

30. The '663 patent is valid and enforceable.

31. The '663 patent includes 18 claims. ('663 patent, Ex. B. at 9:55-12:45.)

32. The '663 patent describes devices, systems, and methods for providing a touchscreen display having a virtual bezel for electronic devices. ('663 patent, Ex. B. at 1:15-20.) The '663 patent addresses technical problems related to how to prevent unintended registering of touching of a touchscreen electronic display, and thereby avoiding unintended actions. Those technical problem also included placing components and controls, for example a camera, a speaker, or sensors to avoid obstruction of the content on the touchscreen display. Those problems further included increasing display area while providing functionality of a physical bezel. *See, e.g.,* '663 patent at 1:21-59; *see also* Fig. 4.

33. The claimed elements and claimed combinations of the claims of the '663 patent were not well-understood, routine, and conventional to a skilled artisan in the relevant field.

34. Among the specific technology improvements to devices utilizing the virtual bezels, the '663 patent describes an active touchscreen region of the display screen having a first set of touch-based inputs from the user of the electronic device and a virtual bezel region along one or more edges of the display screen and adjacent to the active screen region, the virtual bezel region having a touchscreen layer with a second mode of response to a second set of touch-based

inputs from the user of the electronic device. ('663 patent, Ex. B at 9:55-10:15.)

35. The claimed inventions of the '663 patent address technical problems related to how to prevent unintended registering of touching of a touchscreen electronic display, and thereby avoiding unintended actions. Those technical problem also included placing components and controls, for example a camera, a speaker, or sensors to avoid obstruction of the content on the touchscreen display. Those technical problems further included increasing display area while providing functionality of a physical bezel. *See, e.g.,* '663 patent at 1:21-59.

36. The technological improvements described and claimed in the '663 patent were not conventional or generic at the time of their invention, but rather required novel and non-obvious solutions to problems and shortcomings in the art at the time. *See, e.g.*, '663 patent at 1:21-9:41. For example, claims 1 and 14 of the '663 patent are directed to a display screen having a virtual bezel region and an active touchscreen region, both of which display portions of content but have different modes of response to certain touch-based inputs. Moreover, while certain references of the prior art described touch screen displays, the claims of the '663 patent were deemed novel and non-obvious by the USPTO, demonstrating (among other reasons) the non-conventionality of the technology described and claimed in the '663 patent.

37. The inventions claimed in the '663 patent cover more than just the performance of well-understood, routine, or conventional activities known in the art. *See, e.g.*, '663 patent at 1:21-9:41. For example, claim 1 of the '663 patent is directed to a display screen having a virtual bezel region and an active touchscreen region, both of which display portions of content but have different modes of response to certain touch-based inputs.

38. The '663 patent claims inventions that are directed to technological solutions to technological problems. The written description of the '663 patent describes in technical detail

subject matter in support of each of the elements of the claims, including a display screen having a virtual bezel region and an active touchscreen region, both of which display portions of content but have different modes of response to certain touch-based inputs.

39. The written description describes the elements of the claims such that persons of ordinary skill in the art would understand what the claims cover and how the non-conventional and non-generic combination of claim elements differ markedly from and improved upon the art. *See, e.g.,* '663 patent at 1:21-9:41.

40. Technology leaders including Microsoft Technology Licensing LLC, Amazon Technologies, Inc., Samsung Electronics Co., Ltd., and the USPTO have cited the '663 patent family over 20 times. *See* https://patents.google.com/patent/US9645663B2/en; 37 CFR 1.104, Nature of Examination ("the examiner must cite the best references at his or her command.").

41. Viewed in light of the specification of the '663 patent, the claims are not directed to basic tools of scientific and technological work, nor are they directed to a fundamental economic practice. *See, e.g.,* '663 patent at 1:21-12:44. For example, claim 1 of the '663 patent is directed to a display screen having a virtual bezel region and an active touchscreen region, both of which display portions of content but have different modes of response to certain touch-based inputs.

42. The claims of the '663 patent are not directed to the use of an abstract mathematical formula. *See, e.g.,* '663 patent at 1:21-12:44. For example, claim 1 of the '663 patent is directed to a display screen having a virtual bezel region and an active touchscreen region, both of which display portions of content but have different modes of response to certain touch-based inputs.

43. The claims of the '663 patent are not directed to the use of a general-purpose computer. *See, e.g.,* '663 patent at 1:21-12:44. For example, claim 1 of the '663 patent is directed to a display screen having a virtual bezel region and an active touchscreen region, both of which

display portions of content but have different modes of response to certain touch-based inputs.

44. The claims of the '663 patent are not directed to implementation of a mathematical formula. *See, e.g.,* '663 patent at 1:21-12:44. For example, claim 1 of the '663 patent is directed to a display screen having a virtual bezel region and an active touchscreen region, both of which display portions of content but have different modes of response to certain touch-based inputs.

45. The claims of the '663 patent are not directed to generalized steps to be performed on a computer using conventional activity. *See, e.g.,* '663 patent at 1:21-12:44. For example, claim 1 of the '663 patent is directed to a display screen having a virtual bezel region and an active touchscreen region, both of which display portions of content but have different modes of response to certain touch-based inputs.

46. The claims of the '663 patent are not directed to a method of organizing human activity or to a fundamental economic practice long prevalent in our system of commerce. *See, e.g.,* '663 patent at 1:21-12:44. For example, claim 1 of the '663 patent is directed to a display screen having a virtual bezel region and an active touchscreen region, both of which display portions of content but have different modes of response to certain touch-based inputs.

47. The claims of the '663 patent do not take a well-known or established business method or process and apply it to, or using, a general-purpose computer. *See, e.g.,* '663 patent at 1:21-12:44. For example, claim 1 of the '663 patent is directed to a display screen having a virtual bezel region and an active touchscreen region, both of which display portions of content but have different modes of response to certain touch-based inputs.

48. The claims of the '663 patent do not preempt the field of their inventions or preclude the use of other methods and systems because the claims recite specific elements that include more than the performance of well-understood, routine, and conventional activities

previously known to the art. *See, e.g.,* '663 patent at 1:21-12:44. For example, claim 1 of the '663 patent is directed to a display screen having a virtual bezel region and an active touchscreen region, both of which display portions of content but have different modes of response to certain touch-based inputs.

49. The claims of the '663 patent capture the improvements described and illustrated in the specification. For example, claim 1 of the '663 patent is directed to a display screen having a virtual bezel region and an active touchscreen region, both of which display portions of content but have different modes of response to certain touch-based inputs.

## **COUNT I – INFRINGEMENT OF U.S. PATENT NO. 9,395,917**

50. Plaintiff realleges and incorporates by reference the allegations set forth above, as if set forth verbatim herein.

51. Defendant infringes one or more claims of the '917 patent. Upon information and belief, since Defendant had knowledge of the '917 patent and its infringement thereof (no later than the service of this complaint), it has induced and continues to induce others to infringe at least claim 1 of the '917 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including without limitation direct infringement in connection with the making, using, selling, offering for sale, leasing, offering to lease, and/or importing unlicensed vehicles that include electronic devices with touchscreens providing claimed features, such as the capabilities detailed in the preliminary claim charts attached hereto as Exhibit C, Exhibit D, Exhibit E, Exhibit F, Exhibit G, and Exhibit H (which are incorporated herein by reference). The accused instrumentalities identified in those claim charts are examples that were identified based on publicly available information. Plaintiff reserves the right to identify additional infringing activities, products, and

services, including, for example, on the basis of information obtained during discovery.

52. In particular, Defendant's actions that aid and abet others to infringe include advertising vehicles for sale on Defendant's website. On information and belief, Defendant has engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because Defendant has had actual knowledge of the '917 patent and that its acts were inducing infringement of the '917 patent.

53. Plaintiff has been harmed by Defendant's infringing activities regarding the '917 patent, and Plaintiff is entitled to recover damages for Defendant's infringement, which damages cannot be less than a reasonable royalty.

## **COUNT II – INFRINGEMENT OF U.S. PATENT NO. 9,645,663**

54. Plaintiff realleges and incorporates by reference the allegations set forth above, as if set forth verbatim herein.

55. Defendant infringes one or more claims of the '663 patent. Upon information and belief, since Defendant had knowledge of the '663 patent and its infringement thereof (no later than the service of this complaint), it has induced and continues to induce others to infringe at least claim 1 of the '663 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including without limitation aiding and abetting direct infringement in connection with the making, using, selling, offering for sale, leasing, offering to lease, and/or importing of unlicensed vehicles that include electronic devices with touchscreens providing the claimed features, such as the capabilities detailed in the preliminary claim charts attached hereto as Exhibit I, Exhibit J, Exhibit K, Exhibit L, Exhibit M, and Exhibit N. The accused instrumentalities identified in those claim charts are examples that were identified based on publicly available information. Plaintiff

reserves the right to identify additional infringing activities, products, and services, including, for example, on the basis of information obtained during discovery.

56. In particular, Defendant's actions that aid and abet others to infringe include advertising vehicles for sale on Defendant's website. On information and belief, Defendant has engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because Defendant has had actual knowledge of the '663 patent and that its acts were inducing infringement of the '663 patent.

57. Plaintiff has been harmed by Defendant's infringing activities regarding the '663 patent, and Plaintiff is entitled to recover damages for Defendant's infringement, which damages cannot be less than a reasonable royalty.

## **JURY DEMAND**

Plaintiff demands a trial by jury of all issues so triable.

## **PRAYER FOR RELIEF**

Plaintiff respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Plaintiff the following relief:

A. Entry of judgment that Defendant has infringed one or more claims of the '917 patent,

B. Entry of judgment that Defendant has infringed one or more claims of the '663 patent,

C. Damages in an amount to be determined at trial for Defendant's infringement, including any continuing or future infringement through the date such judgment is entered, which amount cannot be less than a reasonable royalty, and an

accounting of all infringing acts, including but not limited to those acts not presented at trial,

D.      Pre-judgment and post-judgment interest on the damages assessed, and

E.      That the Court award Plaintiff its reasonable attorneys' fees and expenses in accordance with 35 U.S.C. § 285, and

F.      Such other and further relief, both at law and in equity, to which Plaintiff may be entitled and which the Court deems just and proper.

This 16th day of May, 2025.

/s/ *Cortney S. Alexander*
Cortney S. Alexander
GA Bar No. 142690
   cortneyalexander@kentrisley.com
   Tel: (404) 855-3867
   Fax: (770) 462-3299
KENT & RISLEY LLC
5755 N Point Pkwy Ste 57
Alpharetta, GA 30022

Attorneys for Plaintiff